# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**ABBEY CAYMAN ASSET COMPANY,**

Plaintiff,

v.

**THE ESTATE OF NITZA MILAGROS MARRERO ROBLES** formed by **GHITZA MARIE VÉLEZ MARRERO, JOSÉ WILFREDO VÉLEZ MARRERO, YARITZA MARIE GUIDICELLI MARRERO, AND MODESTO GUIDICELLI SANTIAGO** by himself and as member of the **ESTATE OF NITZA MILAGROS MARRERO ROBLES,**

Defendants.

**CASE NO. 19-1606 (GAG)**

## OPINION & ORDER

On June 20, 2019, Abbey Cayman Asset Company ("Abbey") brought this action in diversity against the Estate of Nitza Milagros Marrero-Robles, formed by Ghitza Marie Vélez-Marrero ("Ghitza-Vélez"), José Wilfredo Vélez-Marrero ("José-Vélez"), Yaritza Marie Guidicelli-Marrero ("Guidicelli-Marrero"), and Modesto Guidicelli-Santiago ("Guidicelli-Santiago") by himself and as member of the Estate of Nitza Milagros Marrero-Robles (Ghitza-Vélez, José-Vélez, Guidicelli-Marrero and Guidicelli-Santiago ("Defendants") for breach of a mortgage note and its deed. Docket No. 1). Pending before this Court is Abbey's Motion for Summary Judgment against the Defendants (Docket No. 20 and 21), co-defendant Guidicelli-Santiago's opposition thereto (Docket Nos. 27, 36) and Abbey's reply (Docket No. 32).

After carefully reviewing the parties' submissions, and the applicable law, Abbey's Motion for Summary Judgment is hereby **GRANTED**.

### I.     Background

Abbey, as successor-in-interest to Doral Bank ("Doral"), is the secured party of record for a mortgage loan secured by the collateral detailed in the Complaint. (Docket No. 1). Debtor Nitza Milagros Marrero Robles passed away on April 17, 2009. The Estate of Marrero-Robles is composed by Ghitza-Vélez, José-Vélez, Guidicelli-Marrero, and Guidicelli-Santiago, by himself and as member of the Estate of Nitza Milagros Marrero-Robles.

On June 20, 2019, Abbey filed this foreclosure of mortgage action due to Defendants' non-compliance with the terms and conditions of the mortgage loan in the principal amount of **FOUR HUNDRED TWELVE THOUSAND DOLARS ($412,000.00)** and the related loan documents, executed on February 28, 2003 by Marrero-Robles and Guidicelli-Santiago. (Docket No. 1). On June 21, 2019, this Honorable Court issued summons as to defendants the Estate of Nitza Milagros Marrero-Robles, formed by Ghitza-Vélez, José-Vélez, Guidicelli-Marrero, and Guidicelli-Santiago by himself and as member of the Estate of Nitza Milagros Marrero-Robles. (Docket No. 2).

On June 28, 2019, co-defendants Guidicelli-Santiago and José-Vélez were personally served with summons and with the Complaint. (Dockets No. 7-8). On July 24, 2019, Abbey requested an order for summons by publication and the issuance of summons by publication after unsuccessful attempts to personally serve the co-defendants Ghitza-Vélez and Guidicelli-Marrero. (Docket No. 9). On July 25, 2019, the Court issued an Order for Service by Publication, and on that same date, the summons by publication were issued. (Dockets No. 10-11).

After requesting an extension of time of thirty (30) days to answer the Complaint (Docket No. 12), which was granted by this Court on August 12, 2019 (Docket No. 13), on September 11, 2019 co-defendant Guidicelli-Santiago filed his Answer to the Complaint. (Docket No. 14). On

September 12, 2019, Abbey submitted to the Court evidence that the service by publication upon co-defendants Ghitza-Vélez and Guidicelli-Marrero was completed on August 23, 2019, therefore Ghitza-Vélez and Guidicelli-Marrero had until September 23, 2019 to respond to the Complaint or otherwise plead. (Docket No. 15).

On September 25, 2019, Abbey filed a Motion for Entry of Default requesting this Court to enter the default as to co-defendants José-Vélez, Ghitza-Vélez and Guidicelli-Marrero, given that, to that date, all of the aforementioned co-defendants had not appeared before this Court nor filed any responsive allegations, and had thus failed to defend against Abbey's claims in the instant case. (Docket No. 17). On that same date, this Court granted Abbey's Motion for Entry of Default (Docket No. 18) and on September 26, 2019, the Clerk of the Court issued the Entry of Default as to co-defendants José-Vélez, Ghitza-Vélez and Guidicelli-Marrero. (Docket No. 19).

On December 13, 2019, Abbey filed a Motion for Summary Judgment and Memorandum of Law in Support Thereof, along with its Statement of Uncontested Material Facts pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Nos. 20 and 21). On February 4, 2020, after being granted an extension of time by this Court (Docket Nos. 22 and 24), codefendant Guidicelli-Santiago filed a Reply to Petition for Summary Judgment. (Docket No. 27).

On February 4, 2020, this Court issued an Order requesting Abbey to submit an affidavit or declaration under penalty of perjury as to Defendants' competency and military service and on February 5, 2020, Abbey filed a motion in compliance with said order and submitted the declaration under penalty of perjury. (Docket Nos. 26; 27).

On February 7, 2020, Abbey filed a Motion for Leave to File Reply tendering its reply and on that same date this Court issued an Order authorizing Abbey to file its reply. (Docket

Nos. 29 and 31). Also, on that date Abbey filed its Reply to Defendant's Response to Motion for Summary Judgment Filed at Docket Number 27. (Docket No. 32).

On March 10, 2020, Defendant filed a Motion to Alter or Amend Judgment Pursuant to FED. R. CIV. P. 59(e) (Docket No. 34), which was denied on March 11, 2020, given that no judgment had yet been entered in the case. (Docket No. 35). The Court ordered Defendant re-file its Opposition (Docket No. 27) in the corrected format.

On March 15, 2020, Defendant re-filed its Opposition (Docket No. 27), with a two-page Reply to Petition for Summary Judgment. (Docket No. 36). On April 27, 2020, pursuant to Standing Order Misc. No. 20-088 (GAG) (Docket No. 11) ordering the stay of all foreclosure proceedings until May 30, 2020, this Court entered an order staying the instant proceedings until said date. (Docket No. 37). In light that of the fact that said Standing Order is no longer in effect, the Court granted Plaintiffs request to continue with the proceedings. (Docket No. 39).

## II.    Standard of Review

It is well-settled that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). A "genuine" issue is one that could be resolved in favor of either party, and a "material" fact is one that has the potential of affecting the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); see also Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The moving party bears the initial burden of demonstrating the lack of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. The movant party also "must aver an absence of evidence to support the nonmoving party's case." Maldonado-

Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). If not, then the burden "shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Id. The non-movant party may establish that a fact is genuinely in dispute by citing evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. Id. at 255.  At this stage, the court does not make credibility determinations or weigh the evidence. Id.  Moreover, summary judgment may be appropriate if the parties "merely rest upon conclusory allegations, improbable inferences, and unsupported speculation." Rossy v. Roche Prod., Inc., 880 F.2d 621, 624 (1st Cir. 1989); see also Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018).

### III. Applicable Law and Discussion

In support of its Motion for Summary Judgment, and in accordance with Local Rule 56(b), Abbey filed its statement of uncontested facts (Docket No. 21), which was properly supported by documentary evidence  and an unsworn statement under penalty of perjury, as required by FED. R. CIV. P. 56(e). Abbey's statement contains 24 paragraphs, referencing each proposed uncontested material facts, and each of  them duly supported with documentary evidence and/or an unsworn statement under penalty of  perjury. Contrarily, codefendant Guidicelli-Santiago filed a two-paged opposing motion (Docket  No. 27) that fails to comply with Local Rule 56(c),

given that it does not contain a separate, short and concise statement of material facts, nor does it admit, deny or qualify the facts by reference to each numbered paragraph of Abbey's proposed facts. Local Rule 56(c) requires that:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

L. Cv. R. 56(c).

Admitting, denying or qualifying the facts supporting the motion for summary judgment by reference to each numbered paragraph is crucial, because it "allow[s] the court to easily determine the disputed facts." Bautista Cayman Asset Co. v. J.A.M.A. Dev. Corp., 322 F. Supp. 3d 266, 267(D.P.R. 2018) (citing Malavé-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)). The opposing party must "support each denial or qualification by a record citation[,]" and, "[i]f the facts are not properly controverted, they shall be deem admitted." Id. (citing, Natal Pérez v. Oriental Bank & Tr., 291 F. Supp. 3d 215, 219 (D.P.R. 2018) and L. Cv. R. 56(e)). That is, if the party opposing summary judgment fails to comply with Local Rule 56(c), "the rule permits the district court to treat the moving party's statement of facts as uncontested." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007).

Local Rule 56 procures "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." Bautista Cayman Asset Co., 322 F. Supp. 3d at 268 (citing CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). As such, Rule 56 "prevents parties from improperly shift[ing] the burden of organizing

the evidence presented in a given case to the district court." Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 31 (1st Cir. 2010)(citing Mariani-Colón, 511 F.3d at 219) (internal quotation marks omitted). Therefore, "the rule is important to the functioning of the district court, and the First Circuit has consistently held that litigants ignore it at their peril." Bautista Cayman Asset Co. v. J.A.M.A. Dev. Corp., 322 F. Supp. at 268 (citing Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)) (internal quotation marks omitted).

Codefendant Guidicelli-Santiago's opposing motion does not address any of the twenty-four (24) uncontested material facts proposed by Plaintiff. He neither denies or qualifies any of the facts as required by Local Rule 56(c). Rather, Guidicelli-Santiago argues, without any support in law that Abbey's Motion for Summary Judgment is an "attempt to circumvent legal proceedings engaged to in State Court between these same parties, prior to the filing of this case…", that he had previously raised said issue in his Answer to the Complaint (Docket No. 14), but that Abbey never objected to such, and that that alone, "creates a controversy which, to [their] viewpoint, defeats the petition for summary judgment." (Docket No. 27). Consequently, co-defendant Guidicelli-Santiago's opposing motion failed to comply with Local Rule 56(c) given that it does not contain a separate, short and concise statement of material facts, nor does it admit, deny or qualify the facts by reference to each numbered paragraph of Plaintiff statement of facts. See Cabán Hernández, 486 F.3d at 8 (holding that "the district court acted justifiably in rebuffing the appellants' proffered counter-statement and crediting Phillip Morris' version of the facts; [since] the appellants did not admit, deny or qualify [its] assertions of fact paragraph by paragraph as required by Local Rule 56."). Additionally, it is important to note that the remaining codefendants are in default and, to this date, have not appeared before this Court.

In light of the foregoing, and in accordance with the Local Rules, the Court holds that the facts included therein are properly supported by the record, will be deemed admitted as unopposed. The following facts are uncontested:

1. Abbey is an exempt, for-profit corporation, organized and existing under the laws of the Cayman Islands. Abbey's offices are registered in Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005. Abbey has a place of business in the state of Texas and, for diversity jurisdiction purposes, it also has a principal place of business in San Francisco, California. The name and mailing address in the Commonwealth of Puerto Rico of the servicer of the assets acquired by Plaintiff is Capital Crossing Puerto Rico, LLC,221 Ponce de León Avenue, 12th Floor, Suite 1204, San Juan, Puerto Rico 00917.

2. Abbey is the successor in interest to Doral Bank ("Doral") and, as such, is the secured party of record for the credit facility detailed herein and in the Complaint.

3. Debtor Nitza Milagros Marrero Robles ("Marrero-Robles") passed away on April 17, 2009.

4. The Estate of Marrero-Robles is composed by Ghitza Marie Vélez-Marrero, José Wilfredo Vélez-Marrero, Yaritza Marie Guidicelli-Marrero and Modesto Guidicelli-Santiago by himself and as member of the Estate of Nitza Milagros Marrero-Robles (Ghitza-Vélez, José-Vélez, Guidicelli-Marrero and Guidicelli-Santiago) (collectively, "Defendants")

5. Co-defendant Guidicelli-Santiago is of legal age, widow, and resident of Carolina, Puerto Rico and is not in active military service.

6. Co-defendant Guidicelli-Marrero is of legal age, single and resident of

Georgia, United States and is not in active military service.

7. Co-defendant Ghitza-Vélez is of legal age, single and resident of Florida, United States and is not in active military service.

8. Co-defendant José-Vélez is of legal age, married and resident of Bayamón, Puerto Rico and is not in active military service.

9. To this date, co-defendants José-Vélez, Ghitza-Vélez and Mrs. Guidicelli-Marrero havenot appeared before this Court and as such, the Clerk has entered default against co-defendants José-Vélez, Ghitza-Vélez and Mrs. Guidicelli-Marrero

10. On February 28, 2003, Sana Investment Mortgage Bankers, Inc. ("Sana") granted to Marrero-Robles and Guidicelli-Santiago a mortgage loan, assigned to Doral, thereafter to Abbey, whereby Sana granted to Debtors a loan in the principal amount of **$412,000.00**, with interest at an annual rate of 8.95% and maturity date on May 1, 2010 (the "Loan").

11. The Loan is guaranteed by the following Mortgage Note, which is secured by the following Mortgage:

> (i) Mortgage note executed by the Debtors on February 28, 2003, payable to Sana, or to its order, endorsed to Doral, thereinafter endorsed to Abbey, for the principal amount of **$412,000.00** authenticated under affidavit number 12,759 of Notary Public Amaury Llorens Balzac (the "Mortgage Note").
>
> (ii) The Mortgage Note is guaranteed by a mortgage constituted through deed number 18 of mortgage, executed in San Juan, Puerto Rico on February 28, 2003, before Notary Public Amaury Llorens Balzac recorded at page 1 of volume 366, property number **3,186** of Santurce South, Registry of Property, First Section of San Juan, 23rd inscription and at page 1 of volume 366, property number **4,094** of Santurce South, Registry of Property, First Section of San Juan, 23rd inscription (the "Mortgage").

Civil No. 19-1606 (GAG)

12. Abbey is at the present the owner and holder of the Mortgage Note. The obligations evidenced by the Mortgage Note, as well as other obligations of Defendants, are secured by the Mortgage.

13. The Mortgage Note, issued in favor of Doral and subsequently assigned, endorsed to, and currently in the possession of Abbey, is secured by the Mortgage, which encumbers the following properties ("Property I" and "Property II"), described below in both the Spanish and English languages as follows:

  a. **URBAN**: Plot of land in the Southern Section of Santurce, composed of ONE THOUSAND FIVE HUNDRED SIXTY FIVE POINT EIGHTY SIX SQUARE METERS (1,565.86 m.c.). In boundaries by the NORTH, in thirty-eight point twenty-two (38.22) meters with lots number twenty-seven (27), nine (9) and ten (10) of the DEVELOPMENT map owned by Ulises Villar, Elena Prats, Casimiro Figueroa, respectively, and ten (10.00) meters with the site of Mercedes Neval; by the SOUTH, in ten (10.00) meters, with the plot of two hundred (200.00) meters segregated from Caubet and in nineteen point seventy-three (19.73) meters with the Fernández Juncos Avenue, in fifteen point fifty (15.50) meters, with Enrique Campillo's lot; by the EAST, in twenty (20.00) meters with the same lot of two-hundred (200.00) meters, segregated from Caubet and in three point thirty-five (3.35) meters with site of Gonzalo Ubiñas and in fifteen point fifty (15.50) meters with lot of Mercedes Neval, and in fifteen (15.00) meters with lot of Casimiro Figueroa; by the WEST, in twenty-three point fifty (23.50) meters with site of Enrique Campillo, in twenty-nine point fifty (29.50) meters with Street Casimiro Figueroa.

  The property described above is recorded at page 243 of volume 55 of Santurce Sur, property number 3,186, Registry of Property of San Juan, First Section ("Property I").

  **URBANA**: Parcela de terreno en la Sección Sur de Santurce, compuesta de mil quinientos sesenta y cinco punto ochenta y seis metros cuadrados. En lindes por el NORTE, en treinta y ocho punto veintidós metros con los solares números veintisiete, número nueve y número diez del plano de la urbanización propiedad de Ulises Villar, Elena Prats, Casimiro Figueroa, respectivamente, y diez metros con el solar de Mercedes Neval; por el SUR, en diez metros con la parcela de doscientos metros, segregada de Alemañy Caubet y en diecinueve punto setenta y

tres metros con la Avenida Fernández Juncos, en quince punto cincuenta metros, con solar de Enrique Campillo; por el ESTE, en veinte metros con la misma parcela de doscientos metros, segregada de Caubet y en tres punto treinta y cinco metros con solar de Gonzalo Ubiñas y en quince punto cincuenta metros con solar de Mercedes Neval, y en quince metros con terrenos de Casimiro Figueroa; y por el OESTE, en veintitrés punto cincuenta metros con solar de Enrique Campillo, en veintinueve punto cincuenta metros con calle Casimiro Figueroa.

Inscrita al folio 243 del tomo 55 de Santurce Sur, finca número 3,186 Registro de la Propiedad de San Juan I ("Property I").

b. **URBAN**: Lot composed of TWO HUNDRED SQUARE METERS (200.00 m.c.) in the Santurce Ward of this city, bounded by the NORTH, its back, in ten (10.00) meters, with the main property owned by the husbands, Cruz Horta Vázquez; on its front, in equal measure, with Avenida Fernández Juncos; by the EAST, right entering, in twenty (20.00) meters with Gonzalo Ubiñas; and on the WEST, left entering, in equal measure, with the spouses, Cruz Horta Vázquez. Interlace a building.

The property described above is recorded at page 245 of volume 94 of Santurce Sur, property number 4,094, Registry of Property of San Juan, First Section ("Property II").

**URBANA**: Solar compuesto de DOSCIENTOS METROS CUADRADOS (200.00 m.c.) en el BARRIO Santurce de esta ciudad. En lindes por el NORTE, su espalda, en diez (10.00) metros, con la finca principal propiedad de los esposos Cruz Horta Vázquez; por su frente, en igual medida, con la Avenida Fernández Juncos; por el ESTE, derecha entrando, en veinte (20.00) metros con Gonzalo Ubiñas; y por el OESTE, izquierda entrando, en igual medida, con los esposos, Cruz Horta Vázquez.

Enclava un edificio.

Inscrita al folio 245 del tomo 94 de Santurce Sur, finca número 4,094, Registro de la Propiedad de San Juan I ("Property II").

14. The Mortgage is duly recorded at page 1 of volume 366, Property I, Registry of Property, First Section of San Juan, 23rd inscription and at page 1 of volume 366, Property II, Registry of Property, First Section of San Juan, 23rd inscription.

11

15. Pursuant to the Mortgage, it was agreed that the amount of **$362,000.00** would serve as the initial bidding amount for Property I.

16. Pursuant to the Mortgage, it was agreed that the amount of **$50,000.00** would serve as the initial bidding amount for Property II.

17. Defendants are the owners of Property I and II.

18. Defendants have breached their obligations towards Abbey by, among other things, failing to make the agreed upon payments.

19. As of November 30, 2019, Defendants owe Abbey the sum of **$367,564.99** in principal; interests in the amount of **$219,222.40** which continues to accrue, even post-judgment as per the agreement of the parties, until full payment of the debt at **$91.38** per diem; accrued late charges in the amount of **$10,828.56**; other expenses in the amount of **$7,911.41** and any other advance, charge, fee or disbursements made by Abbey, on behalf of Defendants, in accordance with the Mortgage Note and Mortgage, plus costs and agreed attorney's fees in the amount of **$41,200.00** (collectively, the "Obligations").

20. On April 22, 2019, Abbey sent Notices of Default to Defendants informing their failure to comply with their payment obligations as agreed in the Mortgage Note and Mortgage ("Notices of Default"). Therefore, Abbey accelerated the amounts owed and declared that all the obligations under the Mortgage Note and Mortgage, are immediately and automatically due and payable in full.

21. Abbey's efforts to try to collect all outstanding amounts have been unsuccessful.

22. Defendants have not cured the defaults listed above.

23. The amounts owed by Defendants are due, payable and outstanding.

24. In the absence of payment in full of the obligations by Defendants, Abbey is

12

also entitled, among other remedies, to the foreclosure of the Mortgage and the sale by public sale of Property I and II.

### A. Commonwealth Contracts Law

The definition of what constitutes a contract is set forth in Article 1206 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 3371. The cited article provides that a "contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service." P.R. LAWS ANN. tit. 31, § 3372. Under Commonwealth law, in order for a valid contract to exist, there must be a meeting of the minds between two or more parties, and the agreement must comply with three (3) requirements, to wit: consent, cause and consideration. P.R. Laws Ann. Tit. 31, § 3391. The classic proof to identify the object of a contract is to respond to the question, what is it that is owed? See San Juan Credit Inc. v. Ramírez Carrasquillo, 13 P.R. Offic. Trans. 232, 113 P.R. Dec. 181 (P.R. 1982). The cause in a contract is its reason or purpose, that is, the reason for the obligation. The classic proof to detect the cause of a contract is to respond to the question, why is it owed? Id. Contracts are then perfected by the mere consent, and every party is bound from the time of consent not only to comply with that expressly agreed upon, but also with the consequences that, according to their nature, are consistent with good faith, the custom, and the law. P.R. LAWS ANN. tit. 31, § 3376.

One of the most recognizable contracts in our jurisdiction are loan agreements, whereby "one of the parties delivers to the other . . . money or any other perishable thing, under the condition to return an equal amount of the same kind and quality." P.R. LAWS ANN. tit. 31, § 4511. The person who receives the money loaned becomes the owner of such money, but at the same time is obligated to repay such amount, plus agreed-upon interest. See P.R. LAWS ANN. tit. 31, §§ 4571-4573. As

far as payment obligations are concerned, a creditor has the right to demand full payment and cannot be forced to accept partial payments. P.R. LAWS ANN. tit 31 § 3173. This right preserves the integrity of the debt, which, in turn, highlights the fact that an obligation will not be deemed extinguished until the totality of the debt has been repaid. P.R. LAWS ANN. tit. 31 § 3161. The Puerto Rico Supreme Court has established that the courts of justice may not relieve a party of fulfilling what he was obliged to do by contract, if said contract is legal, valid and is not defective. See Garcia v. World Wide Entertainment Co., 802, P.R. Offic. Trans, 133 P.R. Dec. 378, 384 (P.R. 1992).

In the instant case, Abbey, as successor-in-interest to Doral, is the secured party of record for the mortgage loan secured by the collateral claimed here. It is undisputed that Abbey is the owner and holder by endorsement of the mortgage note described in the Complaint. There is also no dispute as to the contractual elements undoubtedly establishing the binding mature obligations breached by the Defendants towards the creditor, Abbey, for the mortgage note executed on February 28, 2003, whereby Sana granted to Defendants the Mortgage Note, endorsed to Doral, subsequently endorsed to Abbey, in the principal amount of **$412,000.00**.

Defendants breached their obligations under the mortgage note and the mortgage deed, among other things, failing to make the agreed upon payments. For such reason, Abbey declared the Defendants' credit facility due and payable in full. However, Defendants have not cured the default despite Abbey's efforts to collect the outstanding amounts.

B. Commonwealth Mortgage Law

In Puerto Rico, the nature and effect of mortgages are governed by the Commonwealth's Property Registry Act, Act No. 210 of December 8, 2015, the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5001, *et seq.* The mortgage law provides that "[a] mortgage directly and

immediately binds an estate and the rights on which it is imposed, whoever its owner or titleholder may be, to the fulfillment of the obligation for the security of which it was constituted. Recorded mortgages shall be strictly real encumbrances, permitting mortgage loans to be made regardless of any subsequent right that is acquired on the same property or mortgage rights." See Soto-Ríos v. BPPR, 662 F. 3d 112, 118 (1st Cir. 2011). The Civil Code sets forth the "essential requisites" of a mortgage contract, including that a mortgage "be constituted to secure the fulfillment of a principal obligation." Id. at 118.

Thus, pursuant to the Puerto Rico Civil Code and the Property Registry Act, it is the mortgagor who remains with the legal title over the property and the mortgage deed grants the mortgagee, once the mortgage deed is duly recorded (due to its constitutive nature) in the Property Registry, "the security produces real effects and becomes operative *erga omnes* in the sphere of real rights." See Rosario Pérez v. Registrar, 15 P.R. Offic. Trans. 644, 648, 115 P.R. Dec. 491, 494 (P.R. 1984); P.R. LAWS ANN. tit. 31, § 5042. In the event of default by mortgagor, the mortgage deed grants the mortgagee the real right to foreclose on the property. The First Circuit has held that, "[u]nder Puerto Rico law, the registration is a 'constitutive' act for a mortgage, and without the existence of a mortgage, a creditor only has an unsecured personal obligation regarding the underlying debt." Soto-Ríos, 662 F. 3d at 121.

Under Puerto Rico law, a mortgage creditor may bring three types of suits to collect a debt, to wit: (1) a summary foreclosure proceeding, (2) a civil foreclosure proceeding, or (3) an ordinary suit for collection of monies. See CRUV v. Torres-Pérez, 11 P.R. Offic. Trans. 879, 111 P.R. Dec. 698, 699-700 (P.R. 1981), A mortgage creditor is not required to foreclose on a mortgage note if he or she does not wish to do so. He or she may disregard this guarantee and demand payment by way of a personal suit against the debtor and attach goods other than the mortgaged

property to execute judgment. See Chicago Title Ins. Co. v. Sotomayor, 394 F. Supp. 2d 452, 461 (D.P.R. 2005).

In the instant case, the mortgage loan agreement is guaranteed by the Mortgage Note, which is secured by the Mortgage constituted through Deed Number 18 of First Mortgage, executed on February 28, 2003 in San Juan, Puerto Rico, before Notary Public Amaury Llorens Balzac, and recorded at page 1 of volume 366, property number 3,186 and property number 4,094 of Santurce South, Registry of Property, First Section of San Juan, 23rd inscription. The original Mortgage Note, which is secured by the Mortgage in favor of Sana, thereinafter endorsed to Doral, was subsequently assigned, endorsed to, and is currently in the possession of Abbey. The Mortgage Note, through the Mortgage, encumbers the Property I (number 3,186) and Property II (number 4,094). The Mortgage is duly recorded at page 1 of volume 366, property number 3,186 and property number 4,094 of Santurce South, Registry of Property, First Section of San Juan, 23rd inscription. Defendants are the owners of the mortgaged properties. Consequently, the Mortgage constitutes a valid lien securing Abbey's credit.

**IV.   Conclusion**

Defendants are indebted to Abbey for the mortgage loan granted on February 28, 2003, guaranteed by the Mortgage Note, which is secured by the Mortgage, and the amounts under which are past due and payable. The undisputed material facts in this case show that the Defendants failed to comply with their obligations under the Mortgage Note and the Mortgage Deed, by, among other things, failing to pay principal and interest due under said documents. Abbey has shown that the amounts owed by the Defendants are due, payable, and outstanding. Additionally, there are no genuine issues of material facts as to Abbey's right to the foreclosure of the Mortgage, and the sale of the properties securing the Mortgage Note.

Accordingly, Abbey is entitled to judgment as a matter of law against Defendants in the total amount of **$646,727.36,** distributed as follows: **$367,564.99** in principal; interests in the amount of **$219,222.40** which continues to accrue, even post-judgment as per the agreement of the parties, until full payment of the debt at **$91.38** per diem; accrued late charges in the amount of **$10,828.56**; other expenses in the amount of **$7,911.41** and any other advance, charge, fee or disbursements made by Abbey, on behalf of Defendants, in accordance with the Mortgage Note and Mortgage, plus costs and agreed attorney's fees in the amount of **$41,200.00**.

Within fourteen (14) days from the date of entry of judgment, the property, pursuant to Abbey's request and with the purpose of collecting the moneys due pursuant to the Mortgage Note and the Mortgage Deed, shall be sold to its highest bidder by the Special Master appointed by this Court at a public auction or judicial sale.

The Special Master appointed by this Court shall conduct the sale of the property in accordance with 28 U.S.C. §2001 and §2002.

Pursuant to the Mortgage, it was agreed that the amount of **$362,000.00** would serve as the initial bidding amount for the first public sale for **Property I**. Should the first public sale fail to produce an award or adjudication, two-thirds of the aforementioned amount or **$241,333.33** shall serve as the minimum bidding amount for the second public sale. Should there be no award or adjudication at the second public sale, the minimum bidding amount for the third public sale shall be **$181,000.00**.

Pursuant to Mortgage, it was agreed that the amount of **$50,000.00** would serve as the initial bidding amount for the first public sale for **Property II**. Should the first public sale fail to produce an award or adjudication, two-thirds of the aforementioned amount or **$33,333.33** shall serve as the minimum bidding amount for the second public sale. Should there be no award or

17

**Civil No. 19-1606 (GAG)**

adjudication at the second public sale, the minimum bidding amount for the third public sale shall be **$25,000.00**.

The Special Master appointed by this Court shall issue the corresponding notice of sale to be published in a newspaper of general circulation. The Special Master will execute the corresponding deed (s) of judicial sale(s) to the purchaser(s) who shall be entitled to the delivery of the properties and their physical possession.

Plaintiff may request to this Court for those additional orders as it may deem advisable to its interest in accordance with the terms of this judgment and the Clerk shall proceed to issue all writs necessary to enforce and execute it.

**SO ORDERED.**

In San Juan, Puerto Rico this 2nd day of September, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge